

Brandon J. Witkow (SBN 210443)
bw@witkowlaw.com
Cory A. Baskin (SBN 240517)
cb@witkowlaw.com
witkow | baskin
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
Tel: 818.296.9508

Attorneys for *Plaintiff*
Martinez Distributing Co., Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTINEZ DISTRIBUTING CO., INC., a California Corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MEXCOR, INC., a Texas Corporation, d/b/a MORALES BEVERAGE GROUP f/k/a MEXCOR INTERNATIONAL; DIRECT INTERNATIONAL WINE & SPIRITS OF ILLINOIS, LLC, a Texas limited liability company, d/b/a MEXCOR DISTRIBUTORS OF CALIFORNIA; ROMPOPE CORONADO, S.A. C.V., a Mexican corporation; and DOES 1-20, inclusive,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) TRADE LIBEL**<br>**(2) INTENTIONAL INTERFERENCE WITH CONTRACT**<br>**(3) INDUCING BREACH OF CONTRACT**<br>**(4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**(5) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**(6) VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200, ET. SEQ.**<br><br>**[DEMAND FOR JURY TRIAL]** |

**COMPLAINT**

Plaintiff Martinez Distributing Co., Inc. ("Plaintiff" or "Martinez"), by and through undersigned counsel, hereby alleges for its Complaint against Mexcor, Inc. d/b/a Morales Beverage Group, f/k/a Mexcor International ("Mexcor Inc."), Direct International Wine & Spirits of Illinois, LLC, d/b/a Mexcor Distributors of California ("Mexcor CA")  (Mexcor Inc. and Mexcor CA hereinafter collectively, "Mexcor"), Rompope Coronado S.A de C.V. (hereinafter, "Coronado Corp."), and DOES 1-20, inclusive (all defendants hereinafter collectively, "Defendants") as follows:

### SUMMARY OF ACTION

1.      Plaintiff brings this case to hold Mexcor to account for its audacious and unlawful misappropriation of Plaintiff's exclusive right to distribute Coronado Rompope—a popular cream liqueur—in California and the Western United States.

2.      In perpetrating the instant scheme against Plaintiff, Mexcor and its co-conspirators, including manufacturer Coronado Corp., have not only brazenly violated the letter and spirit of traditional business norms, but have imperiled, and will, if unchecked, continue to imperil, the foundational three-tier structure that governs alcohol distribution in California and the United States at large.

3.      Until July of this year, Plaintiff had dutifully and successfully served as the exclusive distributor of Coronado Rompope in California, Nevada, Oregon, Washington, and Colorado (hereinafter, the "Western States") pursuant to its express contract with Mex Latin Imports, Ltd. ("Mex Latin")—the exclusive United States importer of Coronado Rompope.

4.      Plaintiff's exclusive contractual arrangement with Mex Latin dates back to October 1997. Pursuant to this arrangement, and in light of Plaintiff's strong track record of performance of the parties' contract, Mex Latin's principals repeatedly assured Plaintiff that, for so long as Mex Latin retained the import rights to Coronado Rompope, and as long as sales of the brand remained strong, Plaintiff would remain its exclusive distributor in the Western States. To this end, both Mex Latin and Plaintiff understood and agreed that Plaintiff's exclusive distribution rights to Coronado

Rompope could not and would not be terminated, except for good cause. It was further understood and agreed, the only circumstance that would qualify as "good cause" for such a termination—other than Mex Latin's loss of the import rights to the brand—was a decline in sales attributable to Plaintiff's performance of the contract.

5.    Despite continuing strong sales of the brand in the Western States due to Plaintiff's extensive marketing efforts and relationships with wholesalers and retailers, in or about August 2023, Plaintiff was informed by Mex Latin that Mexcor was aggressively pursuing the distribution rights to the brand. Plaintiff is informed and believes that Mexcor's pursuit crossed the line into unfair competition because Mexcor unequivocally knew that Plaintiff had a binding contract with Mex Latin to serve as the exclusive distributor for Coronado Rompope in the Western States, but nevertheless targeted the brand and account as if the rights thereto were not contractually encumbered. Plaintiff is further informed and believes that Mexcor's campaign against Plaintiff included acts of trade libel, such as spreading lies and innuendo about Plaintiff's supposed lack of commitment to the brand and/or prioritization of other accounts.

6.    Plaintiff is further informed and believes that Mexcor's unlawful anti-competitive conduct likely included acts of bribery. Mex Latin previously reported to Plaintiff that Mexcor had, in the past, offered a $100,000 bribe to both Mex Latin and Coronado Corp. to acquire the distribution rights to the Coronado Rompope brand for the State of Texas. A leopard does not change its spots.

7.    And this is by no means the first time that serious allegations of bribery have been levied against Mexcor. In fact, in a series of lawsuits filed in 2021 and just resolved a few months ago via confidential settlements, Marketing Global Brands, Corp. ("Global"), a Florida-based alcohol distributor, alleged that Mexcor and its network of family-run businesses conspired with FLA, the Colombian manufacturer of "Aguardiente Antioqueno," to steal Global's exclusive U.S. distribution rights to the brand. This conspiracy allegedly included acts of bribery and other acts of unlawful

competition quite similar to the conduct alleged in the instant complaint. True and correct copies of the final operative complaints and complete list of docket entries in Global's lawsuits against Mexcor and FLA—*Marketing Global Brands, Corp. v. Mexcor Texas, LLC, d/ba Mexcor International Wine & Spirits, et al.*, United States District Court for the Southern District of Texas, Case No. 4:21-cv-02053 (the "Texas Action") and *Marketing Global Brands, Corp. v. Fabrica de Licores Y Alcoholes de Antioquia*, *et al.*, Miami-Dade County, Florida 11th Judicial Circuit, Case No. 2020-009783-CA-01 (the "Florida Action")—are attached hereto as Exhibits 1-4.

8.    As evidenced by the extensive dockets in the Texas and Florida Actions (Exhibits 2 & 4), these litigations lasted over three years, involved substantial discovery and motion practice, imposed a massive burden on the subject courts, and likely caused Global, Mexcor, and FLA (and/or their unfortunate insurers) to incur several hundreds of thousands of dollars each in attorneys' fees.

9.    Coincidentally, Plaintiff was also damaged by Mexcor's theft of Aguardiente Antioqueno from Global. Up until Mexcor's usurpation of Global's rights, Plaintiff had longstanding contract with Global to distribute Aguardiente Antioqueno in California. Plaintiff lost this account when Mexcor took control of the brand.  Not surprisingly, Global's principal, Mr. Jairo Avellaneda, has made a standing offer to Plaintiff to testify in this case concerning Mexcor's *modus operandi*.

10.    Plaintiff is further informed and believes, especially in light of the similarities between Mexcor's unlawful misappropriation of Global's rights to Aguardiente Antioqueno and its instant misconduct directed at Plaintiff's rights to Coronado Rompope, that discovery in this action may well confirm the existence of an unlawful enterprise of racketeering activity by and among Mexcor's web of purportedly independent businesses in various states—in particular California, Texas, and Florida—and across international borders. If and when such facts are developed, Plaintiff will amend its complaint to add claims against Mexcor and its affiliates for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 to 1968, *i.e.*,

the "RICO" Act.

11. While it is not yet evident whether Mexcor's pattern of lawlessness satisfies the RICO standard, there should not be any doubt that Mexcor's improper and unfair conduct targeting Plaintiff has violated California law. Plaintiff has already lost hundreds of thousands of dollars in revenue and stands to lose millions more over the next few years due to Mexcor's unfair and unlawful campaign targeting Plaintiff's exclusive rights to distribute Coronado Rompope.

12. Mexcor's anti-competitive conduct stops now.

**PARTIES**

13. Plaintiff Martinez is a corporation organized under the laws of the State of California with a principal place of business located in Pasadena, California.

14. Since approximately 1997, Martinez has conducted business as an importer and wholesale distributor of wine and spirts in the United States. Martinez purchases and imports legacy brands, mostly from Mexico, and then resales them to multiple retailers in California and to other wine and spirits wholesalers in other states outside of California, following the three-tier system of the industry in the United States.

15. Plaintiff is informed and believes that Coronado Corp. is a corporation with variable capital organized under the laws of Mexico, with a principal place of business in San Luis Potosi, Mexico.

16. Plaintiff is informed and believes that Defendant Mexcor Inc. is a corporation organized under the laws of the State of Texas, with a principal place of business in Harris County, Texas.

17. Plaintiff is informed and believes that Defendant Mexcor CA is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Harris County, Texas.

18. Plaintiff is informed and believes that Mexcor CA's sole member is Eduardo Morales ("Morales"), who is domiciled in Harris County, Texas, and a citizen of the State of Texas for diversity purposes.

19.   Based out of Houston, Texas, Mexcor has an international distributorship network, focusing primarily on spirited liquors. Mexcor is believed to be affiliated with many corporate entities controlled by Morales, including Mexcor Texas, LLC, MF Investments, LLC and Villanueva Realty, LLC. Until its branding change to "Morales Beverage Group" earlier this year, Mexcor had primarily operated under the assumed name of "Mexcor International Wine & Spirits," but also use it also uses and/or has used the assumed names of Agavales Imports, Elite Brands, Top Shelf Brands, Mexcor Distributors, Mexcor Importers & Distributors, Crown Club, Big Horn Spirts, and MexTex, among others. In its marketing materials available on its website, Mexcor touts itself as the "3rd largest Spirits, Beer and Wine Distributor in Texas . . . , 4th largest Spirits Wholesaler in Florida and 5th in California.

20.   Despite ostensibly being comprised of myriad separate companies, each with distinct operations and portfolios necessary to comply with Alcohol Beverage Control ("ABC") Boards in each of the states in which it conducts business, Plaintiff is informed and believes that Mexcor engages in a pattern and practice of disregarding corporate formalities between and among its affiliated entities, treating the enterprise as a whole as a veritable piggy bank for the Morales family.

21.   Plaintiff is ignorant of the true names, capacities, relationships, and extent of participation in the conduct herein alleged of the Doe Defendants sued herein as Does 1 through 20, inclusive, but on information and belief alleges that such Doe Defendants are legally responsible for this conduct. Plaintiff will further amend this complaint to allege the true names and capacities of the Doe Defendants when ascertained.

22.   Plaintiff is informed and believes, and on that basis alleges, that except as otherwise alleged herein, each of the Defendants, including Doe Defendants, is, and at all times relevant to this complaint was, the employee, agent, employer, partner, joint venturer, alter ego, affiliate, and/or co-conspirator of the other Defendants and, in doing the acts alleged herein, was acting within the course and scope of such positions at the direction of, and/or with the permission, knowledge, consent, and/or ratification of the

5

**COMPLAINT**

1  other Defendants. In the alternative, Plaintiff is informed and believes, and based
2  thereon alleges, that each Defendant, through its acts and omissions, is responsible for
3  the wrongdoing alleged herein and for the damages suffered by Plaintiff.

4  **JURISDICTION AND VENUE**

5  23.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332
6  because there is complete diversity of citizenship between Plaintiff and each of the
7  Defendants and the amount in controversy exceeds $75,000. Diversity of citizenship
8  exists because Plaintiff is a citizen of California and  the named Defendants are citizens
9  of Texas and Mexico. Plaintiff is informed and believes that no Doe Defendant is a
10  citizen of the State of California.

11  24.    Personal jurisdiction over Mexcor is proper because Mexcor conducts
12  substantial business in California, including in this District, and because the acts of
13  misconduct alleged against Mexcor in this action specifically caused harm to Plaintiff
14  in California., where it is headquartered and conducts its operations, including
15  administration of the Coronado Rompope account and brand at issue in this case.

16  25.    This Court has specific personal jurisdiction over Coronado Corp. because
17  Coronado Corp. has purposefully directed its unlawful and/or otherwise anti-
18  competitive activities at California and the United States. At all relevant times in and to
19  this action, Coronado Corp. was in an express contractual relationship with Mex Latin
20  pursuant to which it appointed Mex Latin as the exclusive representative, promoter, and
21  distributor for the Coronado Rompope product in the United States and was aware that
22  Mex Latin was in an express or implied contractual relationship with Plaintiff pursuant
23  to which Mex Latin designated Plaintiff as the exclusive distributor of Coronado
24  Rompope in the Western States. Moreover, at all relevant times in and to this action,
25  Coronado Corp. was aware that Plaintiff was a California company, and that Plaintiff's
26  efforts to distribute Coronado Rompope in California yielded significant economic
27  benefits to Coronado Corp.

28  26.    Plaintiff is further informed and believes that Coronado Corp.'s contacts

6

**COMPLAINT**

witkow|baskin

in and with the United States are and have been so continuous and systematic at all relevant times in and to this action that this Court has general jurisdiction over Coronado Corp. Indeed, Coronado Corp. admits as much on its own website, in which it prominently states in Spanish that, in the present day, it is pleased that the people in the United States of America can now enjoy everyone's favorite Rompope Coronado:[1]



## Actualidad

Estamos en todo el territorio nacional y felices de que nuestra gente en los **Estados Unidos de América** ya puede disfrutar el Rompope Coronado favorito de todos.

27.     Venue is appropriate in the Central District of California under 28 U.S.C. § 1391 because Plaintiff is headquartered in this District and a substantial part of the events giving rise to the claims at issue in this case occurred in this District in that Defendants' misconduct specifically targeted Plaintiff in this District, where Plaintiff primarily conducts its operations, including administration of the Coronado Rompope account and brand.

---

[1] *See* https://rompopecoronado.com/nuestra-historia/, accessed on November 22, 2024.

**FACTUAL ALLEGATIONS**

**A.**    **Plaintiff Obtains Exclusive Distribution Rights To Rompope Coronado**

28.    Since the commencement of the parties' business relationship in 1997, Mex Latin's principals have consistently represented to Plaintiff, both orally and in writing, that as long as Mex Latin retains the exclusive right to import Rompope Coronado into the U.S., Mex Latin will continue to designate Plaintiff as its exclusive distribution agent for Rompope Coronado in the Western United States.

29.    On or about June 2, 2012, Mex Latin and Coronado Corp. signed a letter agreement renewing Mex Latin's exclusive rights to represent, promote, and distribute Rompope Coronado for Coronado Corp. in the United States for a period of five years. The agreement further provides: "IF DURING THE 60 (SIXTY) DAYS PRIOR TO THE END OF THE TERM OF THIS AGREEMENT THERE IS NO COMMUNICATION ON THE PART OF EITHER PARTY TO TERMINATE THE AGREEMENT, IT WILL RENEW AUTOMATICALLY FOR A PERIOD OF 10 (TEN) YEARS."

30.    Upon Coronado Corp.'s renewal of Mex Latin's importation rights in June 2012 for the next five years until June 2017, Mex Latin and Plaintiff similarly reaffirmed—orally, in writing, and/or implicity through the parties' course of conduct— their agreement that Plaintiff would continue to serve as Mex Latin's exclusive distribution agent for Rompope Coronado in the Western States for the same five-year period. Mex Latin and Plaintiff further understood and agreed, in accord with the renewal terms between Coronado Corp. and Mex Latin, that their agreement providing Plaintiff with the exclusive distribution rights to Rompope Coronado in the Western States would similarly automatically renew for a period of ten years commencing on June 2, 2017, and continuing through June 2, 2027, unless one of the parties expressly communicated to the other a desire to terminate the agreement during the sixty-day period prior to June 2, 2017.

31.    During the sixty-day period before June 2, 2017, neither Mex Latin nor

Coronado Corp. communicated any request to the other to terminate their exclusive importation agreement concerning Rompope Coronado. Accordingly, by oral statements, written communications, and/or continuing course of conduct, the importation agreement was renewed for a ten-year term that would not expire until June 2, 2027, at the earliest.

32. Similarly, during the sixty-day period before June 2, 2017, neither Plaintiff nor Mex Latin communicated any request to the other to terminate their exclusive distribution agreement concerning Rompope Coronado. Accordingly, by oral statements, written communications, and/or continuing course of conduct, their distribution agreement for the Western States was renewed for a ten-year term that would not expire until June 2, 2027, at the earliest.

33. The parties thereafter repeatedly reaffirmed their oral agreement, that so long as Mex Latin retained the import rights to Coronado Rompope, Plaintiff would continue to serve as Mex Latin's exclusive distributor for the brand in the Western States. The parties agreed and understood that, absent Mex Latin's loss of the import rights from Coronado Corp., Plaintiff's distribution rights could only be terminated based upon poor sales of the brand attributable to Plaintiff's performance of the contract.

## B.   Plaintiff Decides Against Partnering With Mexcor

34. In or about February 2018, only a few months after the respective ten-year renewals of the aforementioned importation and distribution agreements, Marcelo Martinez, Mexcor's then Vice President of California, approached Plaintiff's principal, Javier Martinez, with a proposal to acquire or partner with Plaintiff.

35. Although Mexcor was a bigger company than Plaintiff with a larger nationwide presence, in particular in its home state of Texas, Mexcor's business model was inefficient and it was enamored with Plaintiff's cost-effective lean operation focused on a small portfolio of strong brands. Mexcor was also enamored with Plaintiff's proven success in a California market that Mexcor was desperate to penetrate.

36.     In the spirit of goodwill and in furtherance of what it believed was Mexcor's good faith intent to partner, over the course of 2018 and into July 2020, Plaintiff shared its business model with Mexcor, including its warehousing and logistics operations, as well as the P & L's for its lucrative niche brands, including Coronado Rompope.

37.     Plaintiff also provided Marcelo Martinez of Mexcor with office space at Plaintiff's headquarters for nearly the entirety of 2019 at no cost and made multiple recommendations and introductions to certain industry players, including, but not limited to, Alto Systems, Inc. ("Alto"), a warehouse and inventory control company that has since become crucial to Mexcor's business.

38.     Unable to agree to terms for a formal collaboration, joint venture, or merger, in or about July 2020 Plaintiff and Mexcor terminated negotiations and instead orally agreed to sell each other's products as independent wholesalers. Nevertheless, Plaintiff continued to allow Mexcor to use its California office space free of charge until approximately January 2021.

### C.     Mexcor Targets Pioneer Wines

39.     Unbeknownst to Plaintiff, during approximately the same 2018-2020 period that Mexcor was ostensibly seeking to "partner" with Plaintiff in California, Mexcor was involved in similar joint venture negotiations in Texas with Pioneer Wine Company, L.P. ("Pioneer").

40.     Whereas Plaintiff proved prescient enough to resist Mexcor's proposed asymmetrical terms of partnership, Pioneer appears to have consummated an agreement with Mexcor in or about 2019 that it immediately came to regret. By the time Pioneer filed suit against Mexcor in July 2021, Mexcor was already laughing its way to the bank. A true and correct copy of Pioneer's complaint initiating its lawsuit against Mexcor in Dallas County, Texas, Case No. 21-08844 (the "Pioneer Suit"), is attached hereto as Exhibit 5.

41.     As set forth in the Pioneer Suit, Pioneer and Mexcor agreed that they would

form a new company called MPWS Company, LLC ("MPWS")—which stood for "Mexcor Pioneer Wine and Spirits"—to distribute fine wines and liquor within the the State of Texas. To birth MPWS, Pioneer agreed to sell its wine inventory, intellectual property, and other assets to MPWS in exchange for cash (to pay supplier and vendor obligations) and a 49% interest in the new company, which would be jointly operated by Pioneer's principal, Greg Kassanoff, and Mexcor's principal, Eduardo Morales.

42. According to the Pioneer Suit, however, almost immediately after the creation of MPWS, Morales and Mexcor took actions designed to ensure that Pioneer would not receive any financial distributions from their supposed joint venture. Mexcor accomplished this goal by commingling the books of its various entities and affiliates while shifting expenses onto the MPWS division to ensure that it would not—at least not on paper—generate any profits that Mexcor would be contractually obligated to share with Pioneer.

43. By January 2021—coincidentally, around exactly the same time that Mexcor was cleaning out its office space at Plaintiff's headquarters following the fizzling of its attempt to acquire Plaintiff's business through *legal means*—Mexcor had effectively shut down MPWS and absorbed all of its operations into Mexcor.

**D.    Mexcor Targets Global's  Rights To Aguardiente Antioqueno**

44. As already discussed hereinabove, after completing its duplicitious campaign against Pioneer in 2021, Mexcor next trained its sights on Global's lucrative Aguardiente Antioqueno account, kicking off three more years of intense litigation concerning Mexcor's unlawful and anti-competitive conduct.

**E.    Mexcor Steals Plaintiff's Rights To Rompope Coronado**

45. In or about August 2023, Plaintiff acquired import and distribution rights to two legacy brands from Casa Cuervo/Proximo Spirits (the "Cuervo Spirits"), one of which belongs in the same category of spirits as Coronado Rompope.

46. In advance of closing this deal, Plaintiff had proactively disclosed to Mex Latin its intent to acquire the aforementioned rights to the Cuervo Spirits and inquired

11
**COMPLAINT**

whether Mex Latin had any objections. Mex Latin did not raise any concerns. Instead, Mex Latin appeared to recognize that it is standard in the industry for wholesale distributors to carry multiple brands in the same category and that having the two leading brands of Rompope together in the same distributing house would actually help grow the category overall.

47.    On or about June 4, 2024, Plaintiff's principal, Javier Martinez, met with Mex Latin's principal, Roberto Perez, in California. Over lunch, Mr. Perez informed Mr. Martinez that he (Perez) had decided to visit the California market because Mexcor had conveyed to him and others at Mex Latin that Plaintiff was prioritizing the Cuervo Spirits over Coronado Rompope on its customers' shelves and in some instances even replacing Coronado Rompope completely with the Cuervo Spirits. Mr. Perez also informed Mr. Martinez that Coronado Corp.'s principals had reported to him that Mexcor had made the same representations to Coronado Corp. and that Mexcor was now lobbying Coronado Corp. directly for the distribution rights to the brand controlled by Mex Latin based upon false misrepresentations vis-à-vis the Cuervo Spirits.

48.    During this lunch meeting, Mr. Perez informed Mr. Martinez that, based upon his own firsthand observations from his extensive tour of the Western States, it was obvious that Mexcor's representations about Plaintiff replacing Coronado Rompope with the Cuervo Spirits on its customers' shelves were patently false. Moreover, consistent with Plaintiff's representations to Mex Latin, Mr. Perez found no indication that Plaintiff's distribution of the Cuervo Spirits was having any negative impact whatsoever on the marketing or sales of Coronoado Rompope.

49.    Mr. Perez thus reaffirmed to Mr. Martinez that Mex Latin remained very happy with its exclusive distribution relationship with Plaintiff and continued to be satisfied with and impressed by the financial returns from Plaintiff's performance of the parties' contract.

50.    At the conclusion of their meeting, Mr. Perez advised Mr. Martinez that he would report his findings debunking Mexcor's claims regarding Plaintiff's supposed

favoritism of the Cuervo Spirits to both Mexcor and Coronado Corp. and would continue to recommend to Coronado Corp. that Mex Latin be permitted to continue its exclusive relationship with Plaintiff for distribution of the liqueur in the Western United States. Notwithstanding these efforts, Mr. Perez expressed concern to Mr. Martinez that Mexcor would continue to directly lobby Coronado Corp. to instruct Mex Latin to terminate Plaintiff.

51.     A few weeks later, Plaintiff learned that Mexcor had organized a meeting with both Coronado Corp. and Mex Latin in San Antonio, Texas for the ostensible purpose of closing the "deal" to acquire the distribution rights to Coronado Rompope. Plaintiff is informed and believes that, during this meeting, Mexcor's presentation of its plans for the brand not only included audacious and impossible promises of increased sales, but also directly disparaged Plaintiff and reiterated the false assertion that Plaintiff had been prioritizing the Cuervo Spirits over Coronado Rompope.

52.     On or about July 12, 2024, Mex Latin informed Plaintiff that it had been directed by Coronado Corp. to terminate its contract with Plaintiff and replace Plaintiff with Mexcor as the exclusive distributor of Coronado Rompope in the Western United States.

53.     Since July 12, 2024, Plaintiff has already lost hundreds of thousands of dollars in revenues due to the loss of the Coronado Rompope account, and Plaintiff stands to lose millions more between now and June 2, 2027, which is the earliest date Mex Latin would have been permitted to terminate the parties' exclusive distribution agreement but for the unlawful and malicious interference of Defendants.

54.     Over the most recent three full years of Plaintiff's performance of the Coronado Rompope distribution contract for Mex Latin, Plaintiff averaged sales of more than 27,000 cases per annum, generating over $3 million per year in gross revenues and approximately $1 million per year in gross margin.

55.     Moreover, in 2021, based upon its then 20+ years as the exclusive West Coast distributor of Coronado Rompope, and reasonable expectation based upon the

**COMPLAINT**

2017 renewal of its exclusive distribution rights until at least June 2027, Plaintiff made a huge investment (over $400,000) to develop digital assets in connection with the Coronado Rompope brand, which were intended to yield benefits through 2027 and beyond. These assets included, among other things, the development of recipes and photos and videos of the recipes for use across social media and in printed materials.

56.    Following this massive investment, Plaintiff continued to devote significant efforts and funds toward the marketing of the Coronado Rompope brand. For example, from January through July 2024, alone, Plaintiff had already spent approximately $50,000 on advertising and agency fees, in addition to other promotional expenses and marketing efforts in furtherance of Coronado Rompope.

57.    These investments have gone up in smoke as a result of Defendants' unlawful, unfair, and anti-competitive conduct.

58.    At a minimum, the parties were and are each well aware that, per industry standard, a "termination fee" equal to two times the gross margin earned by the distributor in the territory during the 12 full calendar months immediately preceeding such termination ("Termination Fee") <u>shall</u> be paid to a distributor when a supplier terminates an exclusive distribution agreement other than for good cause or otherwise fails to renew the agreement.

59.    For the 12-month period from July 12, 2023 through July 12, 2024, Plaintiff's gross margin from its sales of Coronado Rompope were at least $800,000. Accordingly, the minimum Termination Fee owed to Plaintiff by Defendants—who are unequivocally responsible for the termination of the instant distribution agreement—is at least $1.6 million.

## FIRST CAUSE OF ACTION

Trade Libel

(Against Mexcor and Does 1-10)

60.    Plaintiff repeats and realleges each of the foregoing allegations, as though fully set forth herein.

14

**COMPLAINT**

61.    Plaintiff is informed and believes that Mexcor's false statements to both Mex Latin and Coronado Corp. concerning Plaintiff's purported replacement of Coronado Rompope with the Cuervo Spirits and/or prioritization of the Cuervo Spirits over Coronado Rompope constituted trade libel.

62.    Mexcor's statements clearly disparaged the quality of Plaintiff's distribution of Coronado Rompope.

63.    The statements were made to a person other than Plaintiff (*i.e.*, to Mex Latin and Coronado Rompope).

64.    Mexcor knew the statements were untrue or, at a minimum, acted with reckless disregard of the truth or falsity of the statements.

65.    Mexcor knew or, at a minimum, should have recognized that Coronado Corp. and/or Mex Latin might act in reliance on the statements, causing Plaintiff financial loss.

66.    Having just completed a similar scheme to steal the Aguardiente Antioqueno brand from Global, Mexcor was well-versed in anti-competitive tradecraft. Mexcor stensibly determined that the rewards from securing the exclusive rights to a unique and lucrative brand such as Coronado Rompope (like Aguardiente Antioqueno) were worth the risk of litigation. To that end, Plaintiff is informed and believes that, as a further inducement for Coronado Corp.'s instructions to Mex Latin to replace Plaintiff with Mexcor, Mexcor promised to indemnify Coronado Corp. for any resulting damages owed to Plaintiff.

67.    Plaintiff in fact suffered direct financial harm because Coronado Corp. acted in reliance on Mexcor's statements.

68.    Specifically, as a proximate result of Mexcor's libelous statements concerning the quality of Plaintiff's distribution services for Coronado Rompope, Plaintiff has suffered damages in amount to be proven at trial, but which are presently estimated to be at least $1 million per annum, totaling at least $3 million in damages over the remaining course of term of Plaintiff's distribution agreement with Mex Latin,

which was not set to expire until June 2027, at the earliest.

69.    Alternatively, at a minimum, Plaintiff is entitled to damages in the amount of the industry standard Termination Fee, which fee is at least $1.6 million.

70.    Moreover, in engaging in the conduct alleged herein, Mexcor acted with oppression, fraud, and/or malice, justifying an award of punitive damages in an amount to be determined at trial up to ten times the amount of Plaintiff's compensatory and consequential damages.

**SECOND CAUSE OF ACTION**

Intentional Interference with Contractual Relations

(Against all Defendants)

71.    Plaintiff repeats and realleges each of the foregoing allegations, as though fully set forth herein.

72.    Defendants each knew of the existence of the contract between Mex Latin and Plaintiff, which provided Plaintiff with the exclusive right to distribute Coronado Rompope in the Western States.

73.    Mexcor knowingly and intentionally interfered with Plaintiff's longstanding exclusivity agreement with Mex Latin by, among other things, petitioning Mex Latin and Coronado Corp. directly to terminate Plaintiff. Plaintiff is informed and believes that Mexcor engaged in trade libel and offered Coronado Corp. bribes and other illegal and/or improper inducements to leverage Mex Latin to sever its relationship with Plaintiff and instead make Mexcor the exclusive distributor of Coronado Rompope.

74.    Coronado Corp. knowingly and intentionally participated in such interference by directing Mex Latin terminate its distribution contract with Plaintiff in favor of Mexcor.

75.    Defendants specifically intended that their statements and conduct disrupt Plaintiff's performance of its distribution contract with Mex Latin by, at a minimum, seeking to strain the relationship between Mex Latin and Plaintiff by raising unfounded doubts about Plaintiff's service and loyalty to the Coronado Rompope brand.

76. Having just completed a similar scheme to steal the Aguardiente Antioqueno brand from Global, Mexcor was well-versed in anti-competitive tradecraft. Mexcor ostensibly determined that the rewards from securing the exclusive rights to a unique and lucrative brand such as Coronado Rompope (like Aguardiente Antioqueno) were worth the risk of litigation. To that end, Plaintiff is informed and believes that, as a further inducement for Coronado Corp.'s instructions to Mex Latin to replace Plaintiff with Mexcor, Mexcor promised to indemnify Coronado Corp. for any resulting damages owed to Plaintiff.

77. Plaintiff in fact suffered direct financial harm as a result of Defendants' aforementioned contractual interference, which caused Mex Latin to terminate Plaintiff as the distributor of Coronado Rompope in the Western States.

78. As a result of Defendants' interference, Plaintiff has suffered damages in amount to be proven at trial, but which are presently estimated to be at least $1 million per annum, totaling at least $3 million in damages over the remaining course of term of Plaintiff's distribution agreement with Mex Latin, which was not set to expire until June 2027, at the earliest.

79. Alternatively, at a minimum, Plaintiff is entitled to damages in the amount of the industry standard Termination Fee, which fee is at least $1.6 million.

80. Moreover, in engaging in the conduct alleged herein, Defendants acted with oppression, fraud, and/or malice, justifying an award of punitive damages in an amount to be determined at trial up to ten times the amount of Plaintiff's compensatory and consequential damages.

### THIRD CAUSE OF ACTION

For Inducing Breach of Contract

(Against all Defendants)

81. Plaintiff repeats and realleges each of the foregoing allegations, as though fully set forth herein.

82. Defendants each knew of the existence of the contract between Mex Latin

and Plaintiff, which provided Plaintiff with the exclusive right to distribute Coronado Rompope in the Western States.

83.    Moreover, Defendants each knew that Plaintiff's agreement with Mex Latin provided that Plaintiff would continue to serve as Mex Latin's exclusive distribution agent for Coronado Rompope in the Western States for so long as Mex Latin retained the import rights to the brand. Defendants also knew that Mex Latin's import rights (and hence Plaintiff's distribution rights) to the brand were not again up for renewal until June 2, 2027, at the earliest.

84.    Mexcor knowingly and intentionally caused Mex Latin to breach its exclusive distribution contract with Plaintiff by, among other things, petitioning Mex Latin and Coronado Corp. directly to terminate Plaintiff. Plaintiff is informed and believes that Mexcor engaged in trade libel and offered Coronado Corp. bribes and other illegal and/or improper inducements to leverage Mex Latin to sever its relationship with Plaintiff and instead make Mexcor the exclusive distributor of Coronado Rompope.

85.    Having just completed a similar scheme to steal the Aguardiente Antioqueno brand from Global, Mexcor was well-versed in anti-competitive tradecraft. Mexcor stensibly determined that the rewards from securing the exclusive rights to a unique and lucrative brand such as Coronado Rompope (like Aguardiente Antioqueno) were worth the risk of litigation. To that end, Plaintiff is informed and believes that, as a further inducement for Coronado Corp.'s instructions to Mex Latin to replace Plaintiff with Mexcor, Mexcor promised to indemnify Coronado Corp. for any resulting damages owed to Plaintiff.

86.    As a result of Mexcor's lobbying efforts, Coronado Corp. directed Mex Latin to terminate its exclusive distribution contract with Plaintiff without regard for the remaining term of the contract.

87.    On or about July 12, 2024, at Coronado' Corp.'s express direction, Mex Latin terminated its Coronado Rompope terminated its contract with Plaintiff, effective immediately. Mex Latin's premature termination of Plaintiff's distribution rights,

without cause and with immediate effect, breached the contract.

88.    As a result of Defendants' conduct inducing Mex Latin to breach its distribution agreement with Plaintiff, Plaintiff has suffered damages in amount to be proven at trial, but which are presently estimated to be at least $1 million per annum, totaling at least $3 million in damages over the remaining course of term of Plaintiff's distribution agreement with Mex Latin, which was not set to expire until June 2027, at the earliest.

89.    Alternatively, at a minimum, Plaintiff is entitled to damages in the amount of the industry standard Termination Fee, which fee is at least $1.6 million.

90.    Moreover, in engaging in the conduct alleged herein, Defendants acted with oppression, fraud, and/or malice, justifying an award of punitive damages in an amount to be determined at trial up to ten times the amount of Plaintiff's compensatory and consequential damages.

## FOURTH CAUSE OF ACTION

For Intentional Interference with Prospective Economic Advantage

(Against all Defendants)

91.    Plaintiff repeats and realleges each of the foregoing allegations, as though fully set forth herein.

92.    Defendants each knew or should have known of the existence of an economic relationship between Mex Latin and Plaintiff, pursuant to which Plaintiff was serving—and for the past 20+ years had served—as the exclusive distributor of Coronado Rompope in the Western States. Defendants also each knew or should have known that this relationship was economically beneficial to Plaintiff and that it stood to continue to produce economic benefits to Plaintiff as long as Plaintiff maintained exclusive distribution rights to the Coronado Rompope brand.

93.    Specifically, by virtue of Mexcor's aforementioned machinations into 2021 concerning a merger, partnership, or joint venture with Plaintiff pursuant to which Plaintiff afforded Mexcor the use of office space and proprietary insights and access to

Plaintiff's business and business model, Mexcor was well aware of the profitability and/or importance of the Coronado Rompope brand to Plaintiff.

94.    Mexcor knowingly and intentionally interfered with Plaintiff's longstanding economic arrangement with Mex Latin by, among other things, petitioning Mex Latin and Coronado Corp. directly to terminate Plaintiff. Plaintiff is informed and believes that Mexcor engaged in trade libel and offered Coronado Corp. bribes and other illegal and/or improper inducements to leverage Mex Latin to sever its relationship with Plaintiff and instead make Mexcor the exclusive distributor of Coronado Rompope.

95.    Coronado Corp. knowingly and intentionally participated in such interference by directing Mex Latin to replace Plaintiff with Mexcor as the exclusive distributor for Coronado Rompope in the Western States.

96.    Defendants specifically intended that their statements and conduct disrupt Plaintiff's economic relationship with Mex Latin by raising unfounded doubts about Plaintiff's service and loyalty to the Coronado Rompope brand.

97.    Having just completed a similar scheme to steal the Aguardiente Antioqueno brand from Global, Mexcor was well-versed in anti-competitive tradecraft. Mexcor ostensibly determined that the rewards from securing the exclusive rights to a unique and lucrative brand such as Coronado Rompope (like Aguardiente Antioqueno) were worth the risk of litigation. To that end, Plaintiff is informed and believes that, as a further inducement for Coronado Corp.'s instructions to Mex Latin to replace Plaintiff with Mexcor, Mexcor promised to indemnify Coronado Corp. for any resulting damages owed to Plaintiff.

98.    Plaintiff in fact suffered direct financial harm as a result of Defendants' aforementioned economic interference, which caused Mex Latin to terminate Plaintiff as the exclusive distributor of Coronado Rompope in the Western States.

99.    As a result of Defendants' interference, Plaintiff has suffered damages in amount to be proven at trial, but which are presently estimated to be at least $1 million per annum, totaling at least $3 million in damages over the remaining course of term of

Plaintiff's distribution agreement with Mex Latin, which was not set to expire until June 2027, at the earliest.

100.    Alternatively, at a minimum, Plaintiff is entitled to damages in the amount of the industry standard Termination Fee, which fee is at least $1.6 million.

101.    Moreover, in engaging in the conduct alleged herein, Defendants acted with oppression, fraud, and/or malice, justifying an award of punitive damages in an amount to be determined at trial up to ten times the amount of Plaintiff's compensatory and consequential damages.

### FIFTH CAUSE OF ACTION

For Negligent Interference with Prospective Economic Advantage

(Against all Defendants)

102.    Plaintiff repeats and realleges each of the foregoing allegations, as though fully set forth herein.

103.    Defendants each knew or should have known of the existence of an economic relationship between Mex Latin and Plaintiff, pursuant to which Plaintiff was serving—and for the past 20+ years had served—as the exclusive distributor of Coronado Rompope in the Western States. Defendants also each knew or should have known that this relationship was economically beneficial to Plaintiff and that it stood to continue to produce economic benefits to Plaintiff as long as Plaintiff maintained exclusive distribution rights to the Coronado Rompope brand.

104.    Defendants each knew or should have known that Plaintiff's economic relationship with Mex Latin would be disrupted if they failed to act with reasonable care. Nevertheless, Defendants, and each of them (and/or in concert with each other) failed to act with reasonable care to respect Plaintiff's economic relationship with Mex Latin.

105.    Mexcor made false statements to both Mex Latin and Coronado Corp. concerning Plaintiff's purported replacement of Coronado Rompope with the Cuervo Spirits and/or prioritization of the Cuervo Spirits over Coronado Rompope. These

1   statements constituted trade libel.

2   106.   Plaintiff is informed and believes that Mexcor also offered Coronado Corp.

3   bribes and other illegal and/or improper inducements which caused Mex Latin to sever

4   its relationship with Plaintiff in favor of Mexcor. Plaintiff is further informed and

5   believes that Coronado Corp. accepted these bribes and/or other unlawful inducements

6   from Mexcor and that these actions, which were undertaken without reasonable care for

7   the existing and prospective business relationship between Mex Latin and Plaintiff, led

8   directly to Plaintiff's loss of the distribution rights to Coronado.

9   107.   On or about July 12, 2024, Mex Latin informed Plaintiff that, at Coronado

10  Corp.'s direction, effective immediately, Mexcor was replacing Plaintiff as the

11  exclusive distributor of Coronado Rompope in the Western States.

12  108.   As a result of Defendants' economic interference as set forth hereinabove,

13  Plaintiff has suffered damages in amount to be proven at trial, but which are presently

14  estimated to be at least $1 million per annum, totaling at least $3 million in damages

15  over the remaining course of term of Plaintiff's distribution agreement with Mex Latin,

16  which was not set to expire until June 2027, at the earliest.

17  109.   Alternatively, at a minimum, Plaintiff is entitled to damages in the amount

18  of the industry standard Termination Fee, which fee is at least $1.6 million.

19  ### SIXTH CAUSE OF ACTION

20  For Unfair Competition in Violation of Cal. B & P Code § 17200, *et seq.*

21  (Against Defendants)

22  110.   Plaintiff repeats and realleges each of the foregoing allegations, as though

23  fully set forth herein.

24  111.   California Business and Professions Code section 17200 defines "unfair

25  competition" as any unlawful, unfair, or fraudulent business actor or practice, or false,

26  deceptive, or misleading advertising.

27  112.   A business practice violates the "unlawful, unfair or fraudulent" prong if

28  it is forbidden by law or is against public policy.

22

**COMPLAINT**

113. As already discussed hereinabove, Plaintiff is informed and believes that Defendants' engaged in the following unlawful conduct to steal Plaintiff's rights to exclusively distribute Coronado Rompope:

- Mexcor made false statements to both Mex Latin and Coronado Corp. concerning Plaintiff's purported replacement of Coronado Rompope with the Cuervo Spirits and/or prioritization of the Cuervo Spirits over Coronado Rompope. These statements constituted trade libel.

- Mexcor offered Coronado Corp. bribes and other illegal and/or improper inducements having a value of more than $250 in violation of California Penal Code § 641.3 and/or Texas Penal Code § 32.43 to leverage Mex Latin into severing its relationship with Plaintiff in favor of Mexcor.

- Coronado Corp. accepted these bribes and/or unlawful inducements having a value of more than $250 in violation of California Penal Code § 641.3 and/or Texas Penal Code § 32.43, and, in turn, induced Mex Latin to breach its contract with Plaintiff by threatening to terminate its own importation contract with Mex Latin if Mex Latin did not comply.

114. Defendants' aforementioned conduct was also "unfair" in that "it threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 187 (1999).

115. As a result of Defendants' conduct as set forth hereinabove, Plaintiff has lost money and property and is entitled to restitution from Defendants and/or disgorgement of their ill-gotten gains in amount to be determined, but which is believed to be at least several million dollars.

116. Defendants' unlawful and unfair practices have also caused irreparable and incalculable injury to Plaintiff's name, business, and goodwill, and, as such, Plaintiff is entitled to injunctive relief.

# PRAYER FOR RELIEF

Wherefore, Plaintiff prays for and demands judgment against Defendants, and each of them, and seeks the following relief:

(a) Compensatory damages in an amount to be determined at trial according to proof, but in no event less than $1.6 million;

(b) Consequential damages in an amount to be determined at trial according to proof, but in no event less than $3 million;

(c) Reasonable exemplary/punitive damages, where permitted by law, sufficient to deter Defendants' further wrongful and malicious conduct;

(d) Equitable monetary relief to account for the unjust unrichment and other ill-gotten gains obtained by Defendants as a result of their improper, unfair, and/or unlawful conduct, including, without limitation, disgorgement of all profits and revenues obtained by Mexcor incident to the distribution of Coronado Rompope in the Western States through at least June 2, 2027;

(e) Injunctive relief, including preliminary and permanent injunctions, ordering Mexcor to issue corrective private and public statements and/or corrective advertising retracting its false and libelous statements concerning Plaintiff and ordering Coronado Corp. to direct Mex Latin to re-appoint Plaintiff as the exclusive distributor of Coronado Rompope in the Western States through at least June 2, 2027;

(f) All pre-judgment and post-judgment interest as allowed by law;

(g) Attorneys' fees and costs where permitted by law or contract; and

(h) Such other and further relief to Plaintiff as the Court deems just and proper.

Dated:  December 13, 2024

Respectfully submitted,

witkow | baskin

By: _____

Brandon J. Witkow

Attorneys for *Plaintiff*
Martinez Distributing Co., Inc.

## **DEMAND FOR JURY TRIAL**

Plaintiff Martinez Distributing Co., Inc. hereby hereby demands a jury trial as to all issues so triable.

Dated:  December 13, 2024                    Respectfully submitted,

witkow | baskin

By: _____
Brandon J. Witkow

Attorneys for *Plaintiff*
Martinez Distributing Co., Inc.